## SUGAR RUN COAL MINING CO. v. UNITED STATES.

### No. 15696.

District Court, E. D. Pennsylvania.

Aug. 12, 1937.

Montgomery & McCracken, of Philadelphia, Pa., Smith, Deibert & Ristig, of Washington, D. C., Charles A. Wolfe, of Philadelphia, Pa., and Robert P. Smith, of Washington, D. C., for plaintiff.

Moe Neufeld, Sp. Atty., Bureau of Internal Revenue, J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., Andrew D. Sharpe and Frederic G. Rita, Sp. Assts. to Atty. Gen., and James W. Morris, Asst. Atty. Gen.

KIRKPATRICK, District Judge.

This is a suit under the Tucker Act (Jud.Code § 24(20), 28 U.S.C.A. § 41(20) to recover a refund of taxes for the year 1918 overpaid in the amount of $6,455.25. The refund is admittedly due the plaintiff, but the defendant has applied a deficiency in a larger amount (also admitted) for the year 1917 as a credit against it, and consequently refused to pay the plaintiff anything.

The principal question involved is whether action by the Commissioner of Internal Revenue abating the 1917 deficiency as uncollectible, while proceedings in respect of the 1918 refund were pending, extinguished the taxpayer's liability for the 1917 tax. If it did, the defendant, of course, cannot now use it as a credit.

The taxpayer's 1917 return was filed May 1, 1918, disclosing a tax of $2,916.25, payment of which was made with the return. In June, 1920, a deficiency assessment for the year 1917, amounting to $44,580.90, was entered against the taxpayer. On January 7, 1921, the taxpayer, having paid $21,655.33, filed a claim for abatement of the balance of $22,925.57. The Commissioner made two allowances upon the claim (in the amounts of $1,424.98 and $15,045.38, respectively), and on September 25, 1925, disallowed the balance amounting to $6,455.21. An appeal was taken to the Board of Tax Appeals on November 10, 1925, in which appeal both the 1917 deficiency just discussed, and a claim for refund of the plaintiff's 1918 tax, were involved. The determination of the Board (June 14, 1928) was that there had been an overassessment of $7,736.33 for 1918 and a deficiency of $6,455.21 for 1917. The overassessment for 1918 was disposed of by crediting $99.90 against a deficiency for the year 1920, refunding $1,181.22 with interest, and crediting $6,455.21 against the unpaid 1917 deficiency.

The fact upon which the plaintiff bases his present contention is that the Commissioner of Internal Revenue, on Schedule I. T. No. 1536, dated January 23, 1926, had already abated as uncollectible the unpaid balance of the 1917 deficiency assessment. Did this action by the Commissioner operate to extinguish the tax liability?

The warrant of authority by which the Commissioner may abate, credit, or refund taxes duly assessed is to be found in the provisions of section 3220 of the Revised Statutes, as amended by section 1111 of the Revenue Act of 1926, 44 Stat. 115 (26 U.S.C.A. § 1670 and note). Without quoting it in full, this statute gives the Commissioner power to "remit [which includes abate], refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected."

It may be conceded that action by the Commissioner, within the limits of the authority so granted, abating a tax results in the entire extinguishment of the taxpayer's liability and operates to wipe out the assessment, and that from that time on the assessment will be dead and as though it had never been made. See Carney Coal Co. v. Commissioner, 10 B. T.A. 1397. But it is obvious that, for this result to ensue, the Comissioner must have acted in accordance with his statutory power, and it is not suggested that the tax abated in this case was "erroneously or illegally assessed."

The statute gives the Commissioner no authority to relieve a taxpayer of liability for a lawfully assessed tax because it appears to be uncollectible. What he has authority to do in such case is to discharge the collector, who is charged with the whole amount of the tax by section 3218, Revised Statutes (26 U.S.C.A. § 1740), from liability to pay it over. Such action is usually taken in accordance with article 1303, Regulation 69 which provides that, "The collector may also present claims for credit of taxes not erroneously assessed but found to be uncollectible. * * *"

Abatements of taxes as uncollectible in accordance with this procedure were before the courts in Kroyer v. U. S. (Ct.Cl.) 55 F.(2d) 495, 499; and Pioneer Rubber Mills v. U. S. (D.C.) 10 F.Supp. 317. In the former case the court said, "It should also be noted in this connection that, while the word 'abatement' usually refers to a cancellation or an annulment of a tax or assessment which has been changed on application of the taxpayer, the particular abatement in this case was an altogether different matter. It was a claim filed by the collector on form 53 to abate an uncollectible tax, so far as the collector was concerned. This form of abatement of claim is used by collectors for the purpose of clearing their books of a tax which they have determined to be uncollectible, and for the purpose of advising the bureau of this condition. It does not cancel or annul the tax, but, on the contrary, the Treasury Regulations provide, in substance, that the obligation to pay the tax still remains upon the person assessed, and it is the collector's duty to use diligence to collect it if opportunity arises."

I can find no logical support for the plaintiff's argument that the fact that the

Commissioner's action was formally communicated to the taxpayer in a certificate of overassessment distinguishes this case from the Kroyer Case, supra, and takes it out of the principles above stated. An abatement in relief of the collector made during the pendency of a contest with the taxpayer is just as much an inter-departmental matter as if made in a case where no such contest existed. Naturally, in the former case the taxpayer would be notified.

■ It does not appear in the evidence in the present case whether the Commissioner's action abating the tax as uncollectible on Schedule I. T. No. 1536 was taken in pursuance of a claim by the collector or not. That does not matter. The Commissioner's authority in respect of lawful but uncollectible assessments does not extend beyond relieving the collector of the charge against him for the tax. It is not easy to imagine that a taxpayer would ask for abatement of a tax as on the sole ground that it was uncollectible, but, if one should, and the Commissioner had thereupon abated it, I would have no doubt that his action would be nugatory and would not extinguish the liability.

■ From the foregoing it would also follow that the action evidenced by I. T. 1536 had no effect in starting the running of the two-year limitation period of section 3226, Revised Statutes, as amended (26 U.S.C.A. §§ 1672–1673).

■ The taxpayer's liability being unaffected by the Commissioner's action, the present case comes squarely within the provisions of section 611 of the Revenue Act of 1928 (45 Stat. 875). Here was an assessment made within the period of limitations properly applicable thereto, made prior to June 2, 1924. A claim in abatement had been filed and collection was stayed until beyond the date when the statute of limitations ran. Payment of the tax was made by a credit within one year after the enactment of the Revenue Act of 1928. It is exactly the kind of situation which section 611 was enacted to cover. As pointed out in Graham v. Goodcell, 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415, the purpose of that act was to extend the statutory period in respect of pending cases in which the assessment had been timely made but collection had been suspended by the taxpayer's resistance. It

was a result of the decision of the Supreme Court in Bowers v. New York & Albany Lighterage Co., 273 U.S. 346, 47 S.Ct. 389, 71 L.Ed. 676, which held that the limitation period applied not only to suits at law but to collections by distraint proceedings which was a source of great embarrassment and unanticipated loss to the government.

The fact that in the present case an assessment was made within the statutory period distinguishes it from Commissioner of Internal Revenue v. U. S. Refractories Corporation (C.C.A.) 64 F. (2d) 69, in which no assessment had been made within the statutory period and no assessment had been made before June 2, 1924. Naturally, the plain provisions of section 611 excluded the situation presented in that case and that statute did not operate to save the tax.

What has been said makes it unnecessary to determine the fact question whether or not as a matter of fact the waiver filed by this taxpayer on December 9, 1925, was intended to include 1917 taxes.

It is also unnecessary to determine whether or not this suit was properly brought for taxes for the year 1918 instead of taxes for the year 1917. The plaintiff had to sue for the 1918 taxes in order to maintain consistency with his theory that the 1917 deficiency which was used as a credit was void. See Parks & Woolson Machine Co. v. U. S. (Ct.Cl.) 58 F.(2d) 868; Routzahn v. Reeves Bros. Co. (C.C.A.) 59 F.(2d) 915, 918; Peerless Paper Box Mfg. Co. v. Routzahn (D.C.) 22 F.(2d) 459; Lowe Bros. Co. v. U. S. (D.C.) 8 F.Supp. 1016.

At the hearing, the parties submitted an agreed statement of facts which are adopted by the court as special findings. In addition thereto all statements of fact made in the foregoing opinion may be taken as special findings.

The defendant's first, second, third, fourth, and fifth requests for conclusions of law are all affirmed.

The plaintiff's first, second, and sixth request for conclusions of law are denied. The plaintiff's third, fourth, and fifth requests for conclusions of law are not material and are answered.

Plaintiff's petition may be dismissed.